Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| JUAN PABLO GONZÁLEZ GONZÁLEZ<br><br>Peticionario<br><br>v.<br><br>MUNICIPIO AUTÓNOMO DE LARES Y OTROS<br><br>Recurrida | KLCE202500545 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Lares<br><br>Caso Núm.: LR2021CV00149<br><br>Sobre: Acción Reivindicatoria |
|---|---|---|

Panel integrado por su presidenta, la Jueza Rivera Marchand, la Jueza Martínez Cordero y el Juez Cruz Hiraldo.

*Martínez Cordero, jueza ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 13 de junio de 2025.

Comparece Juan Pablo González González (en adelante, peticionario), mediante un recurso de *Certiorari,* para solicitarnos la revisión de la *Resolución* emitida y notificada el 31 de marzo de 2025, por el Tribunal de Primera Instancia, Sala Superior de Utuado.[1] Mediante la *Resolución* recurrida, el foro de instancia declaró *No Ha Lugar* la *Moción solicitando sentencia sumaria*, presentada por el peticionario, así como la *Oposición a solicitud de sentencia sumaria y solicitud de sentencia sumaria parcial a favor de tercero demandado*, presentada por Juan González González (en adelante, señor González González).

Por los fundamentos que expondremos, se *expide* el auto de *Certiorari* y se *revoca* la *Resolución* recurrida.

I

El caso del título inició cuando, el 8 de julio de 2021, el peticionario instó una *Demanda* sobre reivindicación, daños y

---

[1] Apéndice del recurso, Anejo XV, a las págs. 87-96.

Número Identificador

SEN2025_____

perjuicios contra el Municipio Autónomo de Lares (en adelante, Municipio).[2] El peticionario incluyó, además, como codemandada la COMPAÑÍA DE SEGUROS X. Adujo ser residente del estado de New Jersey y dueño de una propiedad ubicada en el barrio Piletas del municipio de Lares, Puerto Rico.[3] Esbozó que viajó a Puerto Rico a visitar la propiedad y, allí, encontró que el Municipio había construido una cancha que ocupaba al menos dos mil (2,000) metros de su propiedad. Acotó que dicha construcción fue realizada sin autorización ni remuneración y que el Municipio era responsable de tales actos. Además, alegó que dichos actos le habían causado daños, por lo que solicitó la reivindicación del bien inmueble en cuestión y la demolición de la obra realizada, así como una compensación por una suma no menor de $75,000.00 dólares, la cantidad de $50,000.00 dólares por concepto de costas, gastos y honorarios de abogado, y otras sumas que se acumularían.

Luego, el Municipio presentó su alegación responsiva, en la cual incluyó defensas afirmativas.[4] Por otro lado, el Municipio también instó una *Demanda contra terceros*.[5] Esbozó, en síntesis, haber adquirido de manos del tercero demandado, el señor González González, la propiedad inmueble donde cita la obra realizada. Acotó que, bajo los preceptos de dicha transacción, de buena fe y en la creencia de que era dueño de la propiedad, se edificó la cancha. Por otro lado, expuso que contaba con justo título, que era el poseedor exclusivo en pleno dominio con buena fe y que disfrutaba la propiedad en concepto de dueño por más de diez (10) años. Expresó que el señor González González era directamente responsable por todos los daños alegados en la demanda. Solicitó que, de prosperar

---

[2] Apéndice del recurso, Anejo I, a las págs. 1-4.
[3] Escritura de Compraventa Número 31 del 3 de marzo de 2008, ante el notario Aurelio Arce Moreno.
[4] Apéndice del recurso, Anejo II, a las págs. 5-9.
[5] *Íd.*, Anejo III, a las págs. 10-13.

sus alegaciones, se impusieran honorarios por temeridad a su favor, a ser satisfechos por el señor González González.

Luego de varios trámites innecesarios reseñar, el 25 de enero de 2023, el peticionario presentó una *Demanda enmendada*.[6] La finalidad de la enmienda fue para alegar el reclamo de una partida por concepto de renta por el uso de la propiedad sin su autorización. Además, para solicitar que se emitiera una orden en la cual se obligara al Municipio a consignar una suma no menor de $1,000.00 dólares mensuales, por el tiempo que el Municipio utilizara y ocupara la propiedad.

En reacción, el 14 de marzo de 2023, el Municipio presentó su *Contestación a la Demanda,*[7] a la cual le acompañó defensas afirmativas, en referencia a la demanda enmendada. En su contestación, negó prácticamente todas las alegaciones.

En el interín, el 17 de julio de 2023, el tercero demandado, señor González González presentó su *Contestación a demanda contra tercero,*[8] a la cual le acompañó defensas afirmativas. Admitió algunas alegaciones mientras que, negó otras. Igualmente, solicitó que se declarara sin lugar la demanda contra tercero y que se condenara al Municipio al pago de todas las costas, gastos y se impusieran honorarios de abogado.

Luego, el 5 de marzo de 2024, el peticionario presentó una *Demanda enmendada,*[9] con la finalidad de incluir una alegación para que se aumentara a $1,500.00 dólares mensuales la cuantía, por el tiempo que pasara sin que se entregara la posesión de la propiedad.

En reacción, el 15 de abril de 2024, el Municipio instó su *Contestación a la Demanda enmendada,*[10] a la cual acompañó

---

[6] Apéndice del recurso, Anejo V, a las págs. 16-19.
[7] *Íd.,* Anejo VI, a las págs. 20-25.
[8] *Íd.,* Anejo VIII, a las págs. 27-29.
[9] *Íd.,* Anejo IX, a las págs. 30-33.
[10] Apéndice del recurso, Anejo X, a las págs. 34-43.

defensas afirmativas y una demanda contra terceros.[11] En su contestación, nuevamente, negó prácticamente todas las alegaciones en su contra. Por otro lado, en cuanto a la demanda contra tercero, reprodujo básicamente las alegaciones contra el señor González González y suplicó el mismo remedio.

En reacción, el 6 de mayo de 2024, el señor González González incoó su *Contestación a demanda contra tercero,*[12] a la cual le incluyó *defensas afirmativas* y una *Reconvención.*[13] Nuevamente, admitió algunas alegaciones y negó otras. En su reconvención, alegó que atravesaba por cierto percance de salud que requería un trasplante de riñón, por lo que debía proporcionar evidencia de fondos suficientes, para poder costear los trámites relacionados a una intervención médica y ser colocado en la lista de espera de riñón. Dado a lo anterior, arguyó que el peticionario ofreció comprarle la propiedad en controversia. Acotó que convinieron la compraventa, *ergo*, no se efectuó el pago. De igual forma, expresó que hizo las gestiones para cobrar pero que fueron infructuosas. A tenor solicitó que se declarara nula la Escritura de Compraventa Número 31 del 3 de marzo de 2008, ante el notario Aurelio Arce Moreno (Escritura Núm. 31); se ordenara la remoción de la inscripción de la antedicha escritura del Registro de la Propiedad; se declarara no ha lugar la demanda contra tercero, y se ordenara el pago de costas y honorarios de abogado.

De ahí, el 28 de mayo de 2025, el peticionario presentó su *Contestación a reconvención*, a la cual le acompañó sus defensas afirmativas.[14] El peticionario negó algunas alegaciones mientras que aceptó otras. Además, solicitó que se declarara no ha lugar la reconvención y condenara al señor González González al pago de

---

[11] Apéndice del recurso, Anejo X, a las págs. 39-43.
[12] *Íd.,* Anejo XI, a las págs. 44-47.
[13] *Íd.,* a las págs. 45-46.
[14] *Íd*, Anejo XII, a las págs. 48-51.

honorarios por temeridad, por una suma no menor de $5,000.00 dólares.

Meses más tarde, el 20 de noviembre de 2024, el peticionario instó una *Moción solicitando sentencia sumaria*.[15] En apretado resumen, esbozó que la Escritura Núm. 31, contenía todos los elementos para la validez de un contrato de compraventa y que el señor González González recibió el dinero pactado. Arguyó que la reclamación instada por el señor González González por vía de reconvención, tanto en cuanto a la alegación de nulidad de la escritura de compraventa, como en el alegado incumplimiento contractual, estaban prescritas. A tenor solicitó que se desestimara la reconvención.

Por su parte, el 11 de diciembre de 2024, el señor González González incoó su *Oposición a solicitud de sentencia sumaria y solicitud de [sentencia] sumaria parcial a favor de tercero demandado*.[16] Expuso que no procedía dictar sentencia sumaria a favor del peticionario, puesto a que este incumplió con los requisitos para la validez y perfección del contrato de compraventa. Adujo que fue el propio peticionario quien promovió la nulidad de la escritura. Igualmente, esbozó que existían controversias de hechos porque existían dos (2) escrituras, lo que creaba una situación contradictoria. A tenor, razonó que, lo anterior, impedía que el Tribunal dispusiera del asunto de manera sumaria. Alegó que, del Tribunal acoger la solicitud del peticionario, se le privaría de poder llevar a cabo un descubrimiento de prueba amplio y liberal. A tenor, solicitó que se declarara no ha lugar la solicitud de sentencia

---

[15] Apéndice del recurso, Anejo XIII, a las págs. 52-70. Para sustentar su petitorio sumario el peticionario anejo los documentos siguientes: Anejo I: (i) la Escritura Núm. 31 y (ii) Inscripción de la Escritura Núm. 31 en el Tomo 358, Serie 36 del Registro de la Propiedad.

[16] *Íd.,* Anejo XIV, a las págs. 71-86. Precisa señalar que el señor González González no anejó ningún documento para sustentar su oposición a la solicitud de sentencia sumaria incoada por el peticionario, así como tampoco anejó ningún documento para sustentar su petitorio sumario.

sumaria instada por el peticionario y dictara sentencia sumaria parcial a su favor. En consecuencia, peticionó que se ordenara la inscripción de la "Escritura 56"[17] y eliminara las alegaciones sobre daños y perjuicios del Municipio.

Habiendo quedado sometida la controversia, el 31 de marzo de 2025, el foro de instancia emitió y notificó la *Resolución* que nos ocupa.[18] En ella, declaró *No Ha Lugar* la *Moción solicitando sentencia sumaria,* presentada por el peticionario y la *Oposición a solicitud de sentencia sumaria y solicitud de sentencia sumaria parcial a favor de tercero demandado,* presentada por el señor González González. Además, ordenó la continuación de los procedimientos.

Como parte del dictamen emitido, el tribunal recurrido emitió la siguiente determinación de hecho no controvertido:

1. La Escritura Núm. 31 sobre Compraventa otorgada por Juan González González a favor de Juan Pablo González González, el 3 de marzo de 2008 se encuentra inscrita en el folio 185 del tomo 358 de Lares, finca 17,599 en el Registro de la Propiedad, Inscripción 2ª. (Véase anejo 1, #171).[19]

De otro lado, igualmente, como parte del dictamen emitido, el tribunal de instancia concluyó, en síntesis, que en el presente caso existía controversia sobre si el dinero de la compraventa otorgada, mediante la Escritura Número 31 del 3 de marzo de 2008, fue entregado al señor González González, y si existía otra causa verdadera y lícita y si ocurrió otra interrupción al término prescriptivo mediante una reclamación extrajudicial.

Insatisfecho con lo resuelto, el 15 de abril de 2024, el peticionario presentó una *Moción de reconsideració*n,[20] la cual fue

---

[17] Cabe señalar que, pese a que el señor González González mencionó en su escrito la existencia de una presunta "Escritura 56", este no describió el contenido de esta, como tampoco la anejó a su petitorio.
[18] Apéndice del recurso, Anejo XV, a las págs. 87-96.
[19] *Íd.,* a la pág. 89.
[20] *Íd.*, Anejo XVI, a las págs. 97-111.

denegada mediante *Resolución* emitida el 21 de abril de 2025, y notificada al día siguiente.[21]

Aún en desacuerdo con el curso decisorio del tribunal de instancia, el 21 de mayo de 2025, el peticionario acudió ante nos mediante una petición de *certiorari* en la cual alzó los siguientes tres (3) señalamientos de error:

1. ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DECLARAR NO HA LUGAR LA MOCI[Ó]N DE SENTENCIA SUMARIA CUANDO LA PARTE TERCERA DEMANDADA NO CUMPLIÓ CON LOS REQUISITOS QUE ESTABLECE LA REGLA 36 [y] 36.3(B)(2) DE PROCEDIMIENTO CIVIL SOBRE LAS CONTESTACIONES A LA MOCIÓN DE SENTENCIA SUMARIA, POR LO QUE ESTE TRIBUNAL TENÍA QUE TOMAR COMO CIERTOS LOS HECHOS ESTABLECIDOS EN LA MOCIÓN DE SENTENCIA SUMARIA[.]

2. ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL DETERMINAR LA EXISTENCIA DE CONTROVERSIAS DE HECHO, BASADOS EN MERAS ALEGACIONES DE LA PARTE TERCERA DEMANDADA[.]

3. ERRÓ EL HONORABLE TRIBUNAL DE INSTANCIA AL CONCLUIR QUE LA FALTA DE PAGO EN EL CONTEXTO DE UN CONTRATO DE COMPRAVENTA CONSTITUYE UNA FALTA DE CAUSA EN EL CONTRATO, LO QUE A SU VEZ HACE EL CONTRATO NULO.

Por su parte, el 29 de mayo de 2025, compareció el peticionario para acreditar el cumplimiento con nuestra *Resolución* del 22 de mayo de 2025. Por otro lado, el 3 de junio de 2025, compareció la parte recurrida mediante *Alegato en oposición a certiorari.* Habiendo quedado el recurso perfeccionado, procederemos a disponer del mismo.

II

## A. Expedición del Recurso de *Certiorari*

Los recursos de *certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[22] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el

---

[21]Apéndice del recurso, Anejo XVII, a la pág. 112.
[22] 32 LPRA Ap. V, R. 52.1.

recurso de *certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[23]
>
> [...].

Por su parte, la Regla 52.2 (b) dispone en cuanto a los términos y efectos de la presentación de un recurso de *certiorari* que:

> Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari.*
>
> [...].[24]

Establecido lo anterior, precisa señalar que el recurso de *certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[25] A diferencia del recurso de apelación, el auto de *certiorari* es de carácter discrecional.[26] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para

---

[23] 32 LPRA Ap. V, R. 52.1.
[24] *Íd.*, R. 52.2.
[25] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[26] *Rivera Figueroa v. Joes's European Shop*, 183 DPR 580, 596 (2011).

llegar a una conclusión justiciera".[27] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es función al antojo o voluntad de uno, sin tasa ni limitación alguna".[28] Por otra lado, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *certiorari:*

    A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

    B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

    C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

    D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

    E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

    F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

    G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [29]

Precisa señalar que el Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[30] Quiérase decir que, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso

---

[27] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).
[28] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, a la pág. 435.
[29] 4 LPRA Ap. XXII-B, R.40.
[30] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).

abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[31]

Finalmente, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[32]

### B. La Sentencia Sumaria

El mecanismo procesal de sentencia sumaria es un remedio discrecional extraordinario que, únicamente, se concederá cuando la evidencia que se presente con la moción establezca con claridad la existencia de un derecho.[33] El propósito de este mecanismo procesal es facilitar la solución justa, rápida y económica de los litigios civiles que no presenten controversias genuinas de hechos materiales, razón por la cual no ameritan la celebración de un juicio en su fondo.[34] A esos efectos, "solamente debe ser dictada una sentencia sumaria en casos claros, cuando el Tribunal tenga ante sí la verdad sobre todos los hechos pertinentes".[35] Es decir, para que proceda dictar sentencia por la vía sumaria, es imprescindible que, de los documentos que acompañan la solicitud o que obran en el expediente del tribunal, no surja controversia legítima sobre hechos materiales del caso y que, por ende, sólo reste aplicar el derecho.[36] Ahora bien, a los fines de considerar la moción, para que se dicte sentencia sumariamente, se tendrán como ciertos todos los hechos no controvertidos que consten en los documentos y declaraciones

---

[31] *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).
[32] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008).
[33] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 DPR 881, 911 (1994).
[34] *García Rivera et al. v. Enríquez*, 153 DPR 323, 337 (2001); *Pilot Life Ins. Co. v. Crespo Martínez*, 136 DPR 624, 632 (1994).
[35] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912, citando a *Corp. Presiding Bishop CJC of LDS v. Purcell*, 117 DPR 714, 721 (1986) (Cita depurada); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 279 (1990).
[36] *Nissen Holland v. Genthaller*, 172 DPR 503, 511 (2007).

juradas ofrecidas por la parte promovente.[37] No obstante, tales documentos deben evaluarse de la forma más favorable para la parte que se opone a la moción.[38]

Particularmente, la Regla 36 de Procedimiento Civil regula todo lo concerniente a las solicitudes de sentencia sumaria. En específico, la Regla 36.2 de Procedimiento Civil dispone que:

> Una parte contra la cual se haya formulado una reclamación podrá, a partir de la fecha en que fue emplazada pero no más tarde de los treinta (30) días siguientes a la fecha límite establecida por el tribunal para concluir el descubrimiento de prueba, presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.[39]

Será necesario, además, que la parte que promueva la solicitud de sentencia sumaria, cumpla con los requisitos de forma preceptuados en la Regla 36.3 de Procedimiento Civil, a saber:

(1) una exposición breve de las alegaciones de las partes;

(2) los asuntos litigiosos o en controversia;

(3) la causa de acción sobre la cual se solicita la sentencia sumaria;

(4) una relación concisa, organizada y con párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, indicando los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(5) las razones por las cuales se debe dictar sentencia argumentando el derecho aplicable, y

(6) el remedio que debe ser concedido.[40]

De otra parte, en cuanto a la contestación a la Sentencia Sumaria, la Regla 36.3 (b) de Procedimiento Civil dispone que esta deberá ser presentada dentro del término de veinte (20) días, desde su notificación, y deberá contener lo siguiente:

(1) lo indicado en los subincisos (1), (2) y (3) del inciso anterior;

---

[37] *H.M.C.A. (P.R.), Inc., etc. v. Contralor*, 133 DPR 945, 957 (1993).
[38] *Íd.*
[39] 32 LPRA Ap. V, R. 36.2.
[40] *Íd.,* R. 36.3.

(2) una relación concisa y organizada, con una referencia a los párrafos enumerados por la parte promovente, de los hechos esenciales y pertinentes que están realmente y de buena fe controvertidos, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(3) una enumeración de los hechos que no están en controversia, con indicación de los párrafos o las páginas de las declaraciones juradas u otra prueba admisible en evidencia donde se establecen estos hechos, así como de cualquier otro documento admisible en evidencia que se encuentre en el expediente del tribunal;

(4) las razones por las cuales no debe ser dictada la sentencia, argumentando el derecho aplicable.[41]

Cumplidos los requisitos establecidos para la solicitud de sentencia sumaria y su correspondiente oposición, el inciso (e) de la Regla 36.3 de Procedimiento Civil establece que:

> La sentencia solicitada será dictada inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas si las hay, u otra evidencia demuestran que no hay controversia real sustancial en cuanto a algún hecho esencial y pertinente y que, como cuestión de derecho, el tribunal debe dictar sentencia sumaria a favor de la parte promovente.[42]

No obstante, lo anterior, el solo hecho de no presentar evidencia que controvierta la presentada por la parte promovente no implica que necesariamente proceda la sentencia sumaria.[43] Conforme a lo resuelto el Tribunal Supremo, las partes no puede descansar en las aseveraciones generales, es decir, meras afirmaciones no bastan, sino que, a tenor con la Regla 36.5 de Procedimiento Civil,[44] estarán obligadas a demostrar que tienen evidencia para sustanciar sus alegaciones.[45] Además, como regla

---

[41] 32 LPRA Ap. V, R. 36.3 (b).

[42] *Íd.*, R. 36.3 (e); *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Roldán Flores v. M. Cuebas*, 199 DPR 664, 676 (2018); *Lugo Montalvo v. Sol Meliá Vacation*, 194 DPR 209, 225 (2015).

[43] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a la pág. 913; *García Rivera et al. v. Enríquez*, supra, a la pág. 338; *Consejo Tit. C. Parkside v. MGIC Fin. Corp.*, 128 DPR 538, 549 (1991); *Cuadrado Lugo v. Santiago Rodríguez*, 126 DPR 272, 281 (1990).

[44] 32 LPRA Ap. V, R. 36.5

[45] *Flores v. Municipio de Caguas*, 114 DPR 521, 525 (1983); *Ramos Pérez v. Univisión*, 178 DPR 200, 215-216 (2010).

general, para derrotar una solicitud de sentencia sumaria, la parte opositora deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente.[46]

Es menester subrayar que nuestro Tribunal Supremo ha indicado que el mecanismo de sentencia sumaria no es el apropiado para resolver casos en los cuales hay elementos subjetivos, de intención, propósitos mentales o negligencia, o cuando el factor de credibilidad sea esencial.[47] De la misma manera, también ha razonado que "hay litigios y controversias que por la naturaleza de estos no hacen deseable o aconsejable el resolverlos mediante una sentencia sumariamente dictada, porque difícilmente en tales casos el Tribunal puede reunir ante sí toda la verdad de los hechos a través de 'affidavits' o deposiciones".[48]

Por otra parte, en cuanto al proceso de revisión de las sentencias sumarias, nuestro Alto Foro ha sido enfático en que el Tribunal de Apelaciones debe: (i) examinar *de novo* el expediente y aplicar los criterios que la Regla 36 de Procedimiento Civil[49] y la jurisprudencia le exigen al foro primario; (ii) revisar que, tanto la moción de sentencia sumaria como su oposición, cumplan con los requisitos de forma codificados en la referida Regla 36; (iii) revisar si, en realidad, existen hechos materiales en controversia y, de haberlos, cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil,[50] de exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos; y, por último, de encontrar que los hechos

---

[46] *Ramos Pérez v. Univisión*, 178 DPR 200, 215 (2010); *Roldán Flores v. M. Cuebas*, supra, a la pág. 677.

[47] *Elías y otros v. Chenet y otros,* 147 DPR 507, 521 (1999); *Soto v. Hotel Caribe Hilton,* 137 DPR 294, 301 (1994); *Velázquez Ortiz v. Mun. de Humacao*, 197 DPR 656, 663 (2017).

[48] *Elías y otros v. Chenet y otros,* supra, a la pág. 521, citando a *García López v. Méndez García*, 88 DPR 363, 380 (1963).

[49] 32 LPRA Ap. V, R. 36.

[50] *Íd.,* R. 36.4.

materiales realmente están incontrovertidos, (iv) debe proceder a revisar *de novo* si el juzgador de instancia aplicó correctamente el derecho a la controversia.[51]

Ahora bien, la sentencia sumaria no procederá en las instancias que: (i) existan hechos materiales y esenciales controvertidos; (ii) haya alegaciones afirmativas en la demanda que no han sido refutadas; (iii) surja de los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material y esencial, o (iv) como cuestión de derecho, no proceda.[52] Además, al revisar la determinación del foro primario, respecto a una sentencia sumaria, estamos limitados de dos (2) maneras. *Primero*, solo podemos considerar los documentos que se presentaron ante el foro de primera instancia. Es decir, "las partes no pueden añadir en apelación exhibits, deposiciones o affidávits que no fueron presentados oportunamente en el foro de primera instancia, ni pueden esbozar teorías nuevas o esgrimir asuntos nuevos por primera vez ante el foro apelativo".[53] *Segundo*, solo podemos determinar si existe o no alguna controversia genuina de hechos materiales y esenciales, y si el derecho se aplicó de forma correcta.[54] Entiéndase, que al foro apelativo le es vedado adjudicar los hechos materiales esenciales en disputa, ya que dicha tarea le corresponde al foro de primera instancia.[55]

### C. Teoría General de los Contratos e Incumplimiento Contractual

Bajo nuestro crisol doctrinario, "[l]as obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en [los] que intervenga cualquier género de culpa o

---

[51] *Roldán Flores v. M. Cuebas, et al., supra,* 679; *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 118-119 (2015).

[52] *SLG Fernández-Bernal v. RAD-MAN et al.*, 208 DPR 310, 335-336 (2021).

[53] *Meléndez González et al. v. M. Cuebas, supra*, a la pág. 114. (Cita depurada).

[54] *Íd.*, a la pág. 115.

[55] *Íd.; Vera v. Dr. Bravo*, 161 DPR 308, 335 (2004).

negligencia".[56] Particularmente, las obligaciones contractuales tienen fuerza de ley entre las partes y deben cumplirse según lo pactado.[57] Ahora bien, en nuestro ordenamiento jurídico rige el principio de libertad de contratación.[58] De manera que, los contratantes tienen la facultad de establecer los pactos, condiciones y cláusulas que le sean más convenientes, siempre y cuando no sean contrarios a la leyes, a la moral y al orden público.[59]

En lo que respecta a el contrato, este existe desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[60] Una vez perfeccionado un contrato, las partes que lo suscriben están sujetas a hacer valer el cumplimiento de lo pactado y a todas las consecuencias que, según su naturaleza, sean conformes a la buena fe, al uso y a la ley.[61] Para que se considere que existe un contrato se requiere que concurran tres (3) requisitos: (i) consentimiento de los contratantes; (ii) un objeto cierto que sea materia del contrato, y (iii) la causa de la obligación que se establezca.[62] En lo que concierne al requisito de consentimiento, este se manifiesta por el concurso de la oferta y de la aceptación sobre la cosa y la causa que han de constituir el contrato.[63] Así, pues, los contratos serán obligatorios, cualquiera que sea la forma en que se hayan celebrado, siempre que en ellos concurran las condiciones esenciales para su validez.[64] Por otra parte, en cuanto al elemento constitutivo de la causa, este "se ha equiparado a la contestación de la interrogante, ¿por qué me

---

[56] Artículo 1042 del Código Civil de Puerto Rico, Edición de 1930 (Código Civil de 1930), 31 LPRA sec. 2992. El referido código fue derogado por el Código Civil de Puerto Rico de 2020, aprobado mediante la Ley Núm. 55 de 1 de junio de 2020. Para fines de la presente, se hace referencia únicamente al Código Civil derogado por ser la ley vigente y aplicable a la controversia que nos ocupa.

[57] Artículo 1044 del Código Civil de 1930, 31 LPRA sec. 2994 (derogado).

[58] *Oriental Financial v. Nieves*, 172 DPR 462, 470 (2007).

[59] Artículo 1207 del Código Civil de 1930, 31 LPRA sec. 3372 (derogado); *Blanco Matos v. Colón Mulero*, 200 DPR 398, 408 (2018).

[60] Artículo 1206 del Código Civil de 1930, 31 LPRA sec. 3371 (derogado)

[61] Artículo 1210 del Código Civil de 1930, 31 LPRA sec. 3375 (derogado).

[62] *Íd.*, Artículo 1213, 31 LPRA sec. 3391 (derogado).

[63] *Íd.*, Artículo 1214, 31 LPRA sec. 3401 (derogado).

[64] *Íd.*, Artículo 1230, 31 LPRA sec. 3451 (derogado).

obligué?".[65] Específicamente, en los contratos onerosos, la causa equivale a una contraprestación.[66] No obstante, lo anterior, para un contrato se entienda que en efecto se ha generado un contrato, no basta con que este tenga una causa, esta debe ser licita.[67] Ello, puesto a que se ha razonado que "[l]os contratos sin causa, o con causa ilícita, no producen efecto alguno. Es ilícita cuando se opone a las leyes o a la moral".[68]

De otro lado, cabe acentuar que la intención de las partes será el criterio fundamental para fijar el alcance de las obligaciones contractuales.[69] A raíz de ello, al momento de analizar la intención de los contratantes, los tribunales deben atender, no solo los actos anteriores, coetáneos y posteriores al contrato, sino también las circunstancias indicativas de la voluntad de las partes.[70] En consideración a lo anterior, al examinar la intención contractual, resulta importante considerar quiénes son las partes, sus experiencias particulares y conocimientos especializados sobre la materia sobre la cual versa el contrato.[71] La interpretación final debe ser cónsona con el principio de la buena fe y no llevar a resultados incorrectos, absurdos e injustos para las partes.[72]

En el caso en cual se quebrante una de las obligaciones pactadas mediante un contrato, la parte afectada podrá incoar una acción por incumplimiento contractual.[73] Mediante esta acción *ex contractu,* se podrá solicitar el resarcimiento de los daños que emanen del quebrantamiento de los deberes convenidos.[74] Empero,

---

[65] *Blanco Matos v. Colón Mulero*, supra, a la pág. 408, citando a M.E. García Cárdenas, *Derecho de obligaciones y contratos*, San Juan, MJ Eds., 2012, pág. 419.
[66] *Blanco Matos v. Colón Mulero*, supra, a la pág. 408.
[67] *Íd.*
[68] Artículo 1227 del Código Civil de 1930, 31 LPRA sec. 3432 (derogado).
[69] *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 DPR 64, 69 (1983).
[70] Artículo 1234 del Código Civil de 1930, 31 LPRA sec. 3472 (derogado); *Blas v. Hosp. Guadalupe*, 167 DPR 439, 451 (2006).
[71] *Unysis v. Ramallo Brothers*, 128 DPR 842, 853 (1991).
[72] *Guadalupe Solis v. González Durieux*, 172 DPR 676, 684-685 (2007).
[73] *Cruz Cruz v. Casa Bella Corp.*, 213 DPR 980, 998 (2024).
[74] *Soc. de Gananciales v. Vélez & Asoc*, 145 DPR 508, 521 (1998).

para que proceda esta acción, debe existir un pacto el cual haya generado tanto una obligación, así como una expectativa en virtud de la cual actuaron las partes.[75] Además, será necesario que la parte afectada demuestre la existencia de un nexo causal entre el incumplimiento contractual y el daño reclamado.[76] Ahora bien, la acción por incumplimiento contractual debe presentarte antes de que expire el término prescriptivo de quince (15) años.[77] De lo contrario, la parte afectada por incumplimiento contractual estará impedida de solicitar el renacimiento de los daños.

III

En el presente caso, el peticionario nos invita a concluir que el foro primario cometió tres (3) errores, por los cuales amerita que se revoque la resolución recurrida. En su *primer* error, este plantea que el foro primario falló al declarar sin lugar su moción de sentencia sumaria, ya que el tercero demandado, el señor González González, incumplió con la Regla 36.3 (b) de Procedimiento Civil,[78] por lo que dicho foro debía tomar por cierto los hechos esgrimidos en el referido petitorio sumario. Por otra parte, en su *segundo* señalamiento de error, el peticionario arguye que el juzgador de instancia incidió al disponer que existían controversias de hechos basado en meras alegaciones de parte del señor González González. Finalmente, en su *tercer* error, esgrime que el tribunal *a quo* incidió al determinar que la falta de cumplimiento con las contraprestaciones pactadas en una compraventa implica ausencia de causa en el contrato.

En vista de que, en el recurso ante nuestra consideración, se nos pide revisar una *Resolución* mediante la cual se declaró sin lugar dos (2) solicitudes de sentencia sumaria, nos dispusimos a examinar

---

[75] *Álvarez v. Rivera*, 165 DPR 1, 18 (2005).
[76] *Cruz Cruz v. Casa Bella Corp.*, supra, a la pág. 999.
[77] *Ramos Lozada v. Orientalist Rattan Furniture Inc*, 130 DPR 712, 722 (1992).
[78] 32 LPRA Ap. V, R. 36.3.

*de novo* la moción de sentencia sumaria presentada por parte del peticionario, así como la oposición y solicitud de sentencia sumaria presentada por el señor González González, según nos requiere el ordenamiento jurídico vigente. Tras revisar los autos del presente caso y el derecho aplicable, se desprende que peticionario cumplió a cabalidad con los requisitos de forma de la Regla 36.2 de Procedimiento Civil,[79] al incoar su solicitud de sentencia sumaria. Ahora bien, de un examen de la oposición a la solicitud de sentencia sumaria del señor González González, en la cual, a su vez, peticionó que emitiera una sentencia sumaria a su favor, se desprende que la aludida parte incumplió con los requisitos establecidos en la Regla 36.3 (B) de Procedimiento Civil.[80] Ello, puesto a que, en su escrito, se limitó a exponer un tratado de derecho, y no esgrimió los hechos que estaban y los que no estaban en controversia, así como, tampoco, anejó prueba para sustentar sus alegaciones. Pese a que el incumplimiento de dichas exigencias no implicaba que el foro *a quo* debía automáticamente tomar por cierto lo alegado por el peticionario y declarar con lugar su solicitud de sentencia sumaria, adelantamos que, en este caso, el incumplimiento del señor González González sí ameritaba que se desestimara su *Reconvención,* según fue solicitado por el aquí peticionario en su moción de sentencia sumaria. Nos explicaremos posteriormente.

Establecido lo anterior, nos disponemos a esbozar la procedencia de los errores planteados por el peticionario. Cabe resaltar que la referida exposición se hará de manera conjunta por estar los errores íntimamente relacionados.

Según relatamos previamente, el caso del título tuvo sus inicios cuando el peticionario presentó una *Demanda* en contra del Municipio de Lares en la cual, principalmente, pretendía recobrar

---

[79] 32 LPRA Ap. V, R. 36.2.
[80] *Íd.*

una propiedad ubicada en dicho municipio, sobre la cual era presuntamente el dueño. En reacción, el Municipio instó una *Demanda Contra Tercero* en contra del señor González González, en la cual adujo que había adquirido de este la propiedad en cuestión. Posteriormente, el señor González González presentó una *Reconvención* en contra del peticionario, mediante la cual arguyó que acordó con este último la compraventa de la aludida propiedad, empero, el peticionario no le entregó el pago convenido. Expuso que, pese que realizó las gestiones correspondientes para lograr que el peticionario cumpliera con el pago, estas fueron infructuosas. A esos efectos, solicitó al tribunal de instancia que declarara nula la escritura de compraventa, entiéndase la Escritura Núm. 31.

Así las cosas, el peticionario instó una solicitud de sentencia sumaria, la cual acompañó con la aludida escritura de compraventa y su correspondiente inscripción en el Registro de la Propiedad. En su escrito, planteó que la Escritura Núm. 31 demostraba que entre las partes se perfeccionó un contrato de compraventa y que el pago acordado se le entregó al señor González González. Por otra parte, acentuó que el referido contrato se concretó hacía más de quince (15) años, de forma que, la causa de acción presentada mediante la *Reconvención* del señor González González estaba prescrita.

En reacción, el señor González González presentó su oposición al petitorio sumario, en la cual no presentó hechos en controversia y los asuntos litigiosos esgrimidos por este fueron cuestiones de puro derecho. Estos fueron: (i) si procedía la nulidad de la Escritura Núm. 31, y (ii) si, ante la acción de nulidad, operaba la figura de prescripción o caducidad. Además, el señor González González planteó en su escrito que el incumplimiento con el pago, por parte del peticionario, provocó la nulidad de la aludida escritura y que, presuntamente, existía otra escritura de compraventa-"Escritura 56"- la cual creaba una situación contradictoria. Ahora

bien, el señor González González no acompañó su escrito con ningún documento que sustentara sus alegaciones. Por otra parte, cabe resaltar que, aunque en su petitorio el señor González González igualmente incluyó una solicitud de sentencia sumaria a su favor y en contra del Municipio, esta nada tiene que ver con el recurso ante nuestra consideración.

Examinados los escritos, el tribunal *a quo* declaró *No Ha Lugar* la solicitud de sentencia sumaria del peticionario, así como la oposición y solicitud de sentencia sumaria presentada por el señor González González. Mediante esta *Resolución,* el referido foro concluyó que, en este caso, existía controversia en cuanto a si el dinero de la compraventa otorgada fue entregado al señor González González. Acentuó el Tribunal que, si se probaba que el dinero no fue entregado a este último, habría una falta de causa, lo cual implicaría la nulidad del contrato. Detalló, además, que la acción de nulidad no prescribía. A su vez, concluyó que era necesario determinar si había otra causa verdadera y lícita, y si ocurrió otra interrupción al término prescriptivo mediante una reclamación extrajudicial.

Luego de examinar minuciosamente los autos ante nuestra consideración, así como el derecho aplicable, este Panel difiere del dictamen del tribunal recurrido y entiende que los tres (3) errores esgrimidos por el peticionario *se cometieron.* De entrada, puntualizamos que la Escritura Núm. 31 es un instrumento público, de manera que, en nuestro ordenamiento jurídico vigente, se presume un documento válido y auténtico.[81] A tales efectos, para rebatir su validez, el señor González González, debía, en su oposición a la solicitud de sentencia sumaria, presentar prueba de hechos contrarios a los consignados en la referida escritura para

---

[81] *Sucesión Santos v. Registrador,* 108 DPR 831, 834 (1979).

rebatir la presunción legal.[82] Ahora bien, el señor González González, su oposición estuvo huérfana de prueba, e indubitadamente se limitó a expresar meras alegaciones y exponer el derecho que presuntamente aplicaba a la controversia.

Según expusimos en nuestra previa exposición doctrinal, quien se opone a una solicitud de sentencia sumaria está obligada a demostrar que tiene evidencia para sustentar sus alegaciones.[83] Además, deberá presentar contradeclaraciones juradas y contradocumentos que pongan en controversia los hechos presentados por el promovente.[84] En consecuencia, el señor González González no solo incumplió con el estándar para rebatir la autenticidad y validez de la Escritura Núm. 31, sino que también incumplió con los requerimientos que exige el ordenamiento para oponerse a una solicitud de manera sumaria. Por lo anterior, le era forzoso al tribunal *a quo* acoger como cierto y válido el contenido de la Escritura Núm. 31. En específico, la disposición cuarta y quinta de la referida escritura de compraventa las cuales disponen lo siguiente:

> **CUARTO**: Que previo convenio el efecto compareciente de la primer[85] parte [el señor González González] en este acto cede, vende y traspasa a favor del compareciente de la segunda parte [el peticionario], que así la acepta y adquiere, la propiedad descrita en el apartado primero de este instrumento público con todo derecho, título o acción que tiene y con todo lo que le sea anexo y permanente e inherente y sin reserva ni limitación de clase alguna.

> **QUINTO:** Constituye el precio de venta la ajustada y convenida suma de **QUINCE MIL DOLARES ($15,000.00)**, los que se entregaron en un acto anterior a este en moneda de curso legal de Estados Unidos de américa, siendo todos de circunstancias presentes por lo que le otorga, la parte vendedora a la compradora) la más eficaz y cumplida carta de pago quedando obligados al saneamiento y evicción.

> [. . .].[86]

---

[82] *Monserrate v. López,* 80 DPR 491 (1958); *Vázquez v. Zeda,* 58 DPR 594, 599 (1941)

[83] *Flores v. Municipio de Caguas*, supra, a la pág. 525; *Ramos Pérez v. Univisión*, supra, a las págs. 215-216.

[84] *Ramos Pérez v. Univisión*, supra, a la pág. 215; *Roldán Flores v. M. Cuebas*, supra, a la pág. 677.

[85] *Sic.*

[86] Escritura Núm. 31, a las págs. 2-3, en el Apéndice del recurso, Anejo XIII, a las págs. 52-70.

En consideración a la anterior, y contrario a lo dispuesto por el tribunal de instancia, el contrato de compraventa, habido entre el peticionario y el señor González González, tenía una causa cierta y lícita. Entiéndase, el pago de $15,000.00 dólares por parte del peticionario. Conforme expusimos previamente, la causa es un elemento constitutivo del contrato. Esta puede mejor entenderse como la contestación a la interrogante ¿por qué se obligaron las partes? [87] En otras palabras, la contraprestación. [88] En el caso de marras, las partes se obligaron a entregar una propiedad inmueble a cambio del precio de $15,000.00 dólares.

En la *Reconvención*, sobre la cual el peticionario solicitó que se desestimara por vía sumaria, se alegó que este último y el señor González González acordaron la compraventa de la propiedad en cuestión, sin embargo, el peticionario falló en entregar el dinero acordado para la adquisición de la propiedad. El tribunal de instancia incorrectamente interpretó que, si lo anterior era cierto, el contrato en cuestión tenía ausencia de causa y era nulo. No estamos de acuerdo. Según adelantamos, la causa de la referida compraventa era la entrega de $15,000.00 dólares a cambio de una propiedad inmueble. En el caso en que la alegación del señor González González fuera cierta, y el peticionario nunca le entregó el dinero pactado, lo que se suscitó fue un incumplimiento contractual, no una falta de causa.[89] De manera que, el señor González González podía pedir el resarcimiento de los daños que emanaran de la falta de pago, por parte del peticionario.[90]

En vista de todo lo anterior, podemos concluir que, mediante la solicitud de sentencia sumaria del peticionario y los anejos con los cuales se acompañó la misma, se probó que entre las partes

---

[87] *Blanco Matos v. Colón Mulero*, supra, a la pág. 408.
[88] *Íd.*
[89] *Cruz Cruz v. Casa Bella Corp.*, supra, a la pág. 998.
[90] *Soc. de Gananciales v. Vélez & Asoc*, supra, a la pág. 521.

existió un contrato de compraventa con causa lícita y cierta. De forma que, lo que restaba por descubrir, para saber si procedía lo solicitado en la *Reconvención* presentada por el señor González González, era si, en efecto, ocurrió el incumplimiento contractual por parte del peticionario. Ahora bien, según subrayamos en nuestra exposición doctrinal previa, una acción por incumplimiento contractual debe presentarte en o antes de que expire el término prescriptivo de quince (15) años. [91] Conforme a la Escritura Núm. 31, la compraventa de la propiedad en cuestión se perfeccionó el 3 de marzo de 2008,[92] y la acción por incumplimiento de contrato se presentó el 6 de mayo de 2024, mediante la *Reconvención* incoada el señor González González. A tales efectos, es claro que la causa de acción presentada por el señor González González está prescrita. Ello, puesto a que transcurrieron un poco más de dieciséis (16) años desde el perfeccionamiento de la compraventa. Por todo lo antes expuesto, dado a que, lo que el señor González González alegó en su reconvención fue que el peticionario falló en entregarle el dinero pactado para la compraventa de la propiedad, en otras palabras, que incumplió con sus obligaciones contractuales, el tribunal *a quo* debió declarar Ha Lugar la moción de sentencia sumaria y, en consecuencia, desestimar la reconvención. A tenor con todo lo anterior, no albergamos duda de que no existen controversias por las cuales el foro de instancia debía tomar el curso de acción actuado. Por tanto, el foro *a quo* incidió. Ello, puesto a que insistimos en que la causa de acción que motivó la reconvención estaba *prescrita*.

Por último, cabe señalar que pese a que el señor González González arguye en su oposición a este recurso, que este caso se

---

[91] *Ramos Lozada v. Orientalist Rattan Furniture Inc*, supra, a la pág. 722.
[92] Escritura Núm. 31, a la pág. 1, en el Apéndice del recurso, Anejo XIII, a las págs. 52-70.

encuentra en una etapa temprana del descubrimiento de prueba, por lo que procede que deneguemos expedir el auto de *certiorari* para que se permita descubrir si proceden las alegaciones de su *Reconvención*, sabido es que cuando el Tribunal está ante un caso claro, en el cual el tribunal tenga ante sí la verdad de todos los hechos pertinentes, tiene la facultad de disponer una controversia por vía sumaria. [93] Por ende, no existe impedimento para que se disponga en cuanto a su *Reconvenció*n de manera sumaria.

Al amparo de todo lo expuesto, según adelantamos, este Panel coincide meritorio expedir el auto de *certiorari* para revocar la *Resolución* aquí recurrida, para así declarar *Ha Lugar* la solicitud de sentencia sumaria presentada por la peticionaria. Por último y sin el ánimo de resultar reiterativos, la causa de acción presentada por señor González González en su reconvención estaba prescrita y sabido es cuando una causa de acción esta prescrita, los Tribunales carecen de jurisdicción para atenderla. De manera que, el juzgador así debe declararlo y desestimar la reclamación sin entrar en sus méritos.[94]

A tales efectos, y por no existir razón para posponer que se dicte sentencia sobre la *Reconvención* del señor González González, procede dictar Sentencia Sumaria Parcial desestimando su causa de acción reconvencional, en virtud de la Regla 42.3 de Procedimiento Civil,[95] así obramos.

IV

Por los fundamentos que anteceden, se expide el auto de *Certiorari* y se *revoca* la *Resolución* recurrida. En consecuencia, se declara *Ha Lugar* la solicitud de sentencia sumaria incoada por el peticionario. A tenor, y al amparo de la Regla 42.3 de las de

---

[93] *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, supra, a las págs. 911-912; *Cuadrado Lugo v. Santiago Rodríguez*, supra, a la pág. 279.
[94] *R&B Power, Inc. v. Junta de Subastas ASG*, 213 DPR 685, 698 (2024).
[95] 32 LPRA Ap. V, R. 42.3.

Procedimiento Civil,[96] se dicta Sentencia Sumaria Parcial desestimando la *Reconvención* presentada por el señor González. Así, pues, se devuelve el caso al foro primario para la continuación de los procedimientos.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[96] 32 LPRA Ap. V, R. 42.3.